Good morning, Judge Hall, Judge Berzon, Judge O'Scanlan. I'm Ted Buck, and it's my privilege to represent the people of the City of Seattle and the named individual Seattle police officers in this case. We're here to question two issues. First, assuming the facts as Ms. Brooks, the plaintiff below, asserts, and the undisputed facts in this case, was the application of a drive-stun taser as a pain compliance technique in order to get her to obey lawful orders to get out of the car a violation of her Fourth Amendment rights? If so, under those same facts, was it clearly established at the time that these police officers should have known the application of a pain compliance technique like this was in fact unlawful? And I would submit to you that the answer from the case law that we presented and the undisputed facts is indisputably no in both cases. Now, this was a stun gun that has direct application to the skin, not the dart version. Is that correct? That's a significant difference as well, Your Honor. You're correct. The difference being that in direct application, the taser does not have some of the risks that it has when it fires darts. What does the record tell us about what the plaintiff was doing at the time? She was behind the wheel in the car, motor running, is that correct? When the officers originally contacted her, she was behind the wheel of the car with the motor running. As the situation grew and officers eventually placed her under arrest and ordered her out of the car, the car was still running. At some point before she was tased, one of the officers was able to get in, turn the car off, and drop the keys of the car on the floorboard of the car. So the situation at the time of the tasing was, as the district court... What does the record tell us about what she was doing at that point? Well, as the district court found below, Ms. Brooks does not dispute that she was physically resisting the officers' efforts to take her out of the car at the time, holding onto the steering wheel, wedging herself in the car. At the heart of our appeal is this, that the district court's decision is simply not supported by the evidence and it's contrary to established precedent. And it is in this way. The district court substituted a subjective belief of what the risks are of a taser with the object of evidence in the record. I have some. I mean, in order to have... I'm trying to figure out what... One of the grim elements is what's the crime. I'm sorry, Your Honor, I didn't get it. One of the grim elements in terms of excessive force is what is the crime and what are the dangers to the public. The crime was not signing, what, the second document? First she was given a traffic ticket. She refused to sign the traffic ticket. My understanding is that under the then version of Washington law, you could then charge her with a misdemeanor, the other was an infraction, of not signing the traffic ticket and then give her another citation, right? And they gave her... So they gave her a second... The question is, I gather there's some dispute about whether they actually gave her that second citation. Your Honor, there is a dispute as to whether they gave her the second citation, but it's not a material dispute. Under the law as it existed at the time, the problem is the law changed in 2006, two years after this incident. Right. In 2004, as Judge Jones found, as a matter of law, if somebody refused to sign a traffic citation when ordered to by an officer or when provided by an officer, it was an arrestable offense. And that's not on appeal here and... He found that? Yes, he did, Your Honor. I didn't think he found that, and it doesn't seem to be right. It is... I understood that it was not an arrestable, that refusing to sign a traffic ticket by itself is not an arrestable offense. Currently, it is not, but in 2004, it was. It wasn't an arrestable offense unless you refused to sign the second citation, which was never actually presented to her. No, and Your Honor... Or what she says wasn't presented to her. The confusion arises because of that swap over of the law about the time... No, it doesn't. Let's leave that aside. Under the law as it was at the time, where are you getting the fact that it was an arrestable offense if she wasn't actually presented with the second citation and didn't refuse to sign it? Under the law at the time, the refusal to sign the acknowledgment of the ticket was itself an arrestable offense under RCW 46-61021, and it's, which is part of the traffic code. But it has to be charged, because it's a separate, it's a different, it's a misdemeanor, right? That's correct, Your Honor. And it has to be charged. And it was, and she was found guilty of it. I'm sorry? She was convicted of it. Was she not? She was convicted of it. But the question is whether it was an arrestable offense even though she was not presented, if in fact she wasn't presented with the citation, and refused to sign that. Oh, Your Honor, okay. Perhaps I've been misunderstanding your question. There's no dispute in the record that she was presented with the traffic citation and refused to sign it. I understand that. That was an arrestable offense. But there is a, but. I think what Judge Verzon is asking is why is it, and what is the authority for your assertion that it is an arrestable offense? The statute that I just quoted, it was also an arrestable offense under the Seattle Municipal Code at the time. It became a non-arrestable offense later when the legislature changed it, after this incident. Okay. I understood otherwise, and I just have to look into it. Okay. So at the heart of this, and again, I guess my point on this is that it really doesn't make any difference because she wasn't tased because she didn't sign a traffic citation. She was tased because she was resisting arrest. If she had gotten out of the car, she would have never been tased once she'd been put under arrest. Her resistance of arrest gives officers further reason to take her into custody. I mean, I understand you say it was, but what if it wasn't? Well, let's assume it wasn't a legitimate arrest. You still do not have the right to resist an unlawful arrest. Both this court, the Supreme Court, and Washington State law make it clear that your remedy is not to resist arrest. Your remedy is to come to court and say it's not a lawful arrest. So resisting an unlawful arrest is itself a crime of resisting arrest. So the officers had probable cause to proceed either way. I must say, my whole reaction to this case is what were these officers thinking? Why didn't they just say, fine, here's your ticket, and we'll see in court? Your Honor, I think that's a legitimate question to ask. However, when we look at the case law that surrounds these kinds of circumstances, this court has made it clear on numerous occasions, as has the Supreme Court, in Scott v. Heinrich and other cases, choosing the least available option among those that are lawful is not what's required of police officers. If they have the right, in fact, the Tukwila dancing case, Tory v. Tukwila is a good example of that, police officers could very well have issued citations to those dancers, and they claimed in the lawsuit that the officers should have. The court said, well, they could have, but they didn't have to. And that may have been a wiser thing to do in retrospect. But at the time, the only question is, did they have the authority? As in this case, they did have the authority. And so the arrest was legitimate. Whether they could have taken some other action, Your Honor, is frankly not relevant to the question of whether or not they violated her Fourth Amendment rights, nor is it relevant to whether they had qualified immunity to proceed. So where do you think the district court went wrong, specifically? Right here. The district court substituted its own idea of the level of force of a taser for the evidence of what objectively reasonable police officers do. What they were doing was taking into substantial account the nature of the crime, the fact that this underlying crime here was a traffic ticket. Your Honor, every case that has been cited to this court that deals with very minor traffic citation stops where tasers were employed, the courts come to the same conclusion. Either one, there was no Fourth Amendment violation, even though the suspects, like in the Buckley case, Buckley is virtually on all fours of our case. In Buckley, the court found that the suspect was pulled over for a very minor matter, refused to sign the citation, just like our case. Different than Ms. Brooks, he submitted to arrest, allowed himself to be handcuffed, flopped on the ground when he was walking back to the patrol car, and after several warnings the officer tased him to encourage him to get up and get in the patrol car. The court, the Eleventh Circuit in that case, found that there wasn't even a Fourth Amendment violation there. If you look at the case law that is in our brief, if you see taser case after taser case after taser case, with minimum crimes, with no serious risk to the officers, with no serious resistance... Well, that all may support the qualified immunity, but it doesn't really explain why they're correct. Well, Your Honor... My understanding is this is quite painful. She claims to have scars. I understand that it's less dangerous than the other version of the taser, but it's still very painful and leaves scars. And to me, just as a trees matter and as a forest matter, instead of a trees matter, stepping back from it all, I don't see how you can square with Graham the fact that you can use that kind of force with something that is fundamentally not a serious, a dangerous problem. It's a traffic stop. Allow me to take your analogy of the forest instead of the trees, Your Honor. If we look at the category of pain compliance, which the evidence shows these officers understand a drive-stun taser to be, and you look at what other things fall in that, including a maneuver that was used by the police officers in this case and the district court didn't have any problem with, a wrist-lock maneuver. The taser has less risk of serious injury, less risk of permanent injury, less risk of injury to the officers. So it actually falls below the level of force that the court below in this case seemed to have no problem with. Thank you. Thank you, Counsel. Your time has expired. Thank you, Your Honor. We'll hear from the appellee. Good morning, Your Honor. This is Eric Savelle, appearing for the appellee, Malika Brooks. I think perhaps a good place to start in looking at the counsels referred to in the briefs was the legal landscape that was available to the arresting officers as objective standard to be applied to arresting officers given the circumstances of the case. Mr. Buck makes the interesting argument that the use of the taser was appropriate in this case because it was the least likely to result in injury and the least likely to result in the kind of harm which she ultimately suffered, namely scarring. I think it's important to look at the order that this was ordered. Do you dispute the question as to whether she was resisting arrest, that she was forcefully resisting, first of all, refusing to get out of the car, and then, secondly, physically resisting holding onto the steering wheel and that sort of thing? Absolutely. The statement is made in the briefs, and the observation was made by Judge Jones, that Ms. Brooks never denied holding onto the steering wheel while she was being tased. And in that regard, counsel is arguing that she was resisting arrest. Well, that's a little bit deceptive. In her declaration, she states that the door was opened. Her arm was placed behind her by Officer Ornelas. He held her left arm while Officer Jones administered the taser first to the thigh. I'm talking about pre-taser. She was not resisting arrest pre-taser, Your Honor. The pre-taser, she was asked to get out of the car. She asked the officer, why do I have to get out of the car? He didn't answer her. Instead, what he did is he started a dialogue with his partner, Jones and Ornelas, Jones with the taser, and the dialogue went something like this. After she told them she was pregnant, she had to go to the bathroom. It was 8.30 in the morning on a public street across the street from an elementary school. And here these two officers are saying to each other in her presence, where should we tase her? Well, she's pregnant. We better not tase her on her belly. Let's tase her on her thigh. And so they're intimidating her with their discussion, their dialogue with one another. They're firing off the taser, this 50,000-volt device that everyone admits is extremely painful. All the while, this woman is sitting peaceably in her car. Well, where does this recital of evidence that she was holding onto the steering wheel and resisting, physically resisting efforts, is that in the record or not? It's not in the record. That's their version of what happened. But we're not here to look at their version. We're here to look at her version. And she states in her declaration that that door opened and they were on top of her, one of them holding her, the other one putting the taser on her in rapid succession, first on the thigh, then on the shoulder, then on the neck. And, you know, the other interesting aspect of this, she testified, and she stated in her declaration, that she is, after that first tase, which is extremely painful, she screamed, and then she started to hit the horn. Now, if she's blowing the horn with her right hand and Officer Ornelas has got her with the left hand, her left arm behind her, it's pretty difficult for her to be holding onto that steering wheel. That's what her testimony is. That's what the evidence is for purposes of this review. And so to suggest that there was resisting arrest while she was being tased is something that the district court just didn't buy. So what is the relevance to the analysis of the underlying crime, and what is the underlying crime? If it's not a resisting arrest, what is it? Well, I listened to Your Honor's questions of counsel, and I think it's extremely confusing to the uninitiated to try to sort out the procedure of when can you be taken to jail, and what can you be charged with, and what will support an arrest. And I think Your Honor focused on exactly what the argument was that we were trying to make in the brief, namely the initial crime. It's not really a crime. It's a speeding ticket. It's a minor infraction. The refusal to sign that traffic ticket is not an arrestable offense. No matter what counsel says, that was the law at the time in the state of Washington. How can we verify the contrast in views as to what the law of the state of Washington was at the time? Well, it's in the record. I argued it quite some length, and Judge Jones disagreed with me, but I stand by what I put in the record. It's in the motion's opposition to the motion. So your position, to be precise, is that it didn't become an arrestable offense unless and until she refused to sign the second citation. Exactly right. And you say she never did that, or at least she says she didn't do it. She says she never did it because she was... There's some time frame thing on the record, on the time stamp on the second citation, which suggests that maybe she never actually even got it. That's exactly right, and she stated also that... So let's follow that through. Suppose it's true. My understanding of the federal law under Virginia v. Moore is it wouldn't matter. Is that true? Well, that's true. Okay. So then I'm just trying to get the lay of the land. So if you believe this, then, if this turns out to be true after we go through the Washington law, it wouldn't matter to the federal law anyway, the federal 1983 case, but it might matter to the state cause of action? Well, conceivably could to the state cause of action, but it does matter to the federal claim in this regard. This is not a false arrest case. It's not a probable cause to make an arrest case, but the reason I felt it was so important is because it demonstrated that the conduct of the police officers could be particularly egregious in this particular unique context where here they're exercising discretion really improperly by taking a person to jail and arresting that person for this traffic infraction, albeit that had they gone through the procedure correctly, as Your Honor points out, they should have provided her with the second citation. They don't have to do that under federal law. That's true. But I felt it was very important because it has this effect. You know, Judge Jones pointed out in denying or in dismissing the Monell claims that we brought against the city and the chief of police that we could not demonstrate anything about the policy of the Seattle Police Department being unconstitutional with respect to use of force in this context. And on page 15 of his order, this is the record, ER-128. It's about 10 pages in or 15 pages into the order. He makes this observation. When he denied our, when he grabbed our motion for summary judgment, he says, indeed, the policy is more protective of citizens' rights than the Constitution, referring to the SPD's formal use of force policy as not being unconstitutional. The judge says, because it requires officers to use the least force necessary to accomplish their objectives. And then he says this. Then he says this. The problem here to me is that it's the objectives that seem so silly. Silly is a wrong word. That one would hope they were not pursuing, but they seem to be, and they may perhaps have the right to, which is to arrest somebody for a traffic offense or for not signing a piece of paper in a traffic offense. Now, one would hope that they would use some brains and not do it, but let's suppose that they had the authority to do it. Then the least force question is kind of, to me, not the problem here. The problem is why did they do this at all? Once you allow them to do it and say they could do it, i.e., arrest the person, make the person get out of the car and arrest her and take her to jail because she didn't sign a traffic ticket, then the fact is that she didn't get out of the car when she was told to get out of the car, and they used some force to get her out of the car. So at that point, it seems to me your case is weaker. Well, they used excessive force to get her out of the car because they used a device which was extremely painful, capable of causing the injuries that she sustained, and according to the district judge, totally unnecessary. First, they had the option to let her go in their own description. Well, that's true. See, that becomes the key question, whether the option to let her go is a relevant consideration under Graves v. Conner analysis. Yes. Because when it was a real option here, you wouldn't hope. But here's the problem. If you're going to say that the legal landscape didn't provide the officers with the guidance that they were entitled to have, and therefore they're entitled to qualified immunity, then you have to wonder isn't the legal landscape partially displayed to these judges or to these officers not just by virtue of the Conner criteria, but also their own use of force policy? Because Judge Jones said, had the officers who arrested her followed the policy, that is to use the least force necessary. But what would they have done? I mean, unless you circle in the don't do anything option, because this is really a serious crime. But if you wash that out and say, well, they were just going to arrest her one way or another, then what could they have done that was less force? Well, one option would be to open the door, take her by the arm and escort her out of the vehicle. Thank you. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and we will hear argument next in Exund v. Astrup.
judges: Hall, O'scannlain, Berzon